All right. Again, we're hearing a case in 18-1722 E-Video versus United States. And again, I apologize for having forgotten that you were still here. Please proceed. Thank you, Your Honor. If it pleases the Court, I'm Patrick Delaney here for E-Video. I basically have three points I want to cover. First of all, with regard to the question of res judicata, there was a prior proceeding. I refer to that as SAUS 1. I refer to this proceeding now as coming out of SAUS 2. There was a very, very different set of pleadings for these two matters. So what's the difference? Why don't you focus in on what the difference is? Well, the big difference is that in the second proceeding, SAUS 2, we added a whole lot more of an explanation of the jurisdictional facts. This is the MPEP stuff? The MPEP as the offer, yes. Also everything about the director being the authoritative negotiator for the government. Basically, we went through all the elements in detail for the implied and fact contracts and added them to the complaint. So they were worked into the complaint. Now, the underlying point of contention is 35 U.S.C. 132a and then the regulatory provision that comes from that. That appeared in the SAUS 1 complaint as well. And this Court and the Court of Claims found that it was an implied in law. The contract, if it was just based... Correct. So what makes the difference here to make it, you're arguing it's your new pleadings made it an implied, the issue an implied in fact contract? Correct. Correct, Your Honor. Tell us, explain that one to me. Well, yes. The difference is that the implied in fact contract here is the offer arising from the patent office to examine the patent applications. It is not the offer to comply with 132a and give notice that the applications were in the SAUS program. That is a small sub-condition of the offer. But the overall implied in fact contract is the overall contract based on the USPTO saying, you know, the offer is if you bring your patent application to us and pay the fees, we will examine your patent application. But that was the same issue that the Court confronted in the first instance. So I'm just trying to discern what's the difference between this case and the earlier case. Well, if I could give you a hypothetical example, based on the closest analogous case that I could find for the Supreme Court, the Salomon case. involved the vendor with the corn, bringing the corn to the government contractor, and the contract had expired by time. And basically, the Court found that there was an implied in fact contract in that, based on the actions of the parties and the prior prices, even if there was no verbal contract, there was still an implied in fact contract. And if you take a look, what happened was is that the Court of Claims, in this second case, has dissected out one part of the implied in fact contract and seen it as an implied in law contract based on that one part being dissected out. And it was the notice provision from 132A. Now, the analogy that I'm trying to make with the Salomon case here would be is that if you were to dissect out the implied in fact contract that there was the duty of the government to pay the fee for the corn, if you were to dissect that out, you could also call that an implied in law contract. But in fact, if you look at that condition within the overall framework of the total contract, you know, the offer and the acceptance and the consideration, if you look at it within the total framework, you can't dissect out that one condition. It's just a critical condition of performance of the overall implied in fact contract. So what I'm trying to say is that the pleadings for the SOS 2 complaint has a large, much better explanation of the overall framework of the implied in fact contract in that by dissecting out the notice provision, the notice provision of 132A had been the primary fact that had been presented in the SOS 1 complaint. The SOS 2 complaint also points out that this notice provision was violated, but it is not. Can I take you back to the question that the Chief Judge asked you earlier? Because I guess I still don't understand what are the sufficient new facts to convert jurisdiction over what we previously held was an implied in law contract. So what is the new stuff you pled in the SOS 2 complaint that you think moves it outside of an implied in law contract? I actually took out all those provisions from the SOS 2 complaint and I put them in the reply brief. They're all listed there verbatim, re-quoted. There's about 20 paragraphs in the reply brief. Well, you ought to be able to summarize at least what the most important ones are. Oh, yes. All right. Certainly. Well, the offer is the overall offer from the patent office to perform patent examination procedure based on the acceptance by the patent applicant. The acceptance by the patent applicant is executed by the patent applicant filing the patent application and paying the initial fees. And this is a performance contract that takes place over the course of the examination of the patent application. Now, one of the most important aspects of the patent examination process is that the PTO will explain why they are rejecting a patent application. And what I'm pointing out is that by designating the application into the SOS program, without giving any notice or telling the patent applicant that the patent application was being held up because it was in the SOS program, it was not explaining how the patent applicant could cure whatever defects were in the patent application to expedite or to get the patent application allowed into a patent. I guess I don't understand how that would confer jurisdiction. What am I missing? Because, well, the jurisdiction of the Tucker Act there would arise under the implied in fact contract aspect of the Tucker Act. And you believe that there is an implied in fact contract between the patent office? I just don't understand the argument. I'm sorry. Well, the patent office advertises and it has a very, very detailed MPEP that explains exactly how it is going to perform a patent application on any application. And it is a large document that explains the course of conduct. So those details, your inclusion of those details in the second complaint are what would differentiate this from being an implied in law contract versus an implied in fact contract? Yes, Your Honor. I just had one small other point I wanted to make, if I may. One of the things that I noticed about the Supreme Court jurisprudence on implied in fact contracts were almost all patent cases from before we had section, I think it's 1420, excuse me, 1498A, before 1948. You couldn't sue the federal government for patent infringement. But basically you had the Supreme Court bending over backwards in numerous cases before that date to provide jurisdiction based on implied contracts between the inventor or the patent owner bringing the case and whatever part of the government they were suing. And I cited all these cases in my brief, but I was just amazed at how much, how far the Supreme Court jurisprudence had favored finding implied in fact contracts on behalf of the inventors or the patent owners. Most of them were inventors as patent owners when they brought the cases against the federal government. And I'm not saying that this should be a determining factor here, but I'm thinking in terms of it should be a factor for consideration in finding an implied in fact contract for the inventors of the patent applications in this case. Because they've given the same quid pro quo. They've disclosed their invention to the public. They've entered the patent application process. So they've already given something of a gift to the public. So it's just a consideration on the equities that I wanted to bring to your attention. Thank you. We're ready, Mr. Kim for the government. One brief point in rebuttal in regard to the 1498A issue that was brought up with regard to a supposed preference for implied contracts. As we pointed out in our briefs, that certainly does not apply in this situation. We're not talking about use by the government of a patented invention. What would you say are the differences between this case and the last one? And by the last one, you mean Saw's one, Your Honor? It boils down to additional citations to the MPP. And we would submit that because the MPP is entirely circumscribed by the relevant statutes and the implementing regulations, it adds nothing of substance to the jurisdictional issue. I'm happy to answer any questions that the court may have. Thank you. Thank you. Just as a point for the record, in the argument section of the reply brief, we point out there's numerous citations to the MPP. But there's also an explanation of the USPTO director as the primary negotiator for the federal government, the authoritative negotiator for the federal government. And there's a long explanation about how it's not just the MPP, but how it is the course of conduct and the payment of fees between the parties, between the patent applicant and the USPTO, that is the basis for the implied contract here. So if I could go through all of the explanation. There's an explanation of what the consideration is. The consideration is the payment of fees by the applicant. The acceptance is the filing of the application and the ongoing filing of different papers throughout the course of the patent office, excuse me, patent examination. And there's intent to be bound that is shown by the parties, by their participation in the process. Basically, I've gone through all the elements of the implied contract and listed them out in great detail. It's much more than just the MPP. Thank you. All rise.